**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | No. 13 CR 726 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| DAJUAN KEY, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On October 8, 2013, a special grand jury indicted Defendant DaJuan Key with a charge for one count of knowingly transporting a minor in interstate commerce with the intent that the minor engage in prostitution in violation of 18 U.S.C. § 2423(a). (Dkt. No. 16).

Key moved to suppress evidence acquired from warrantless searches of his motel room and rental car on September 10, 2014. (*See* Dkt. Nos. 47, 48). After holding a suppression hearing, the Court denied Key's motion to suppress evidence recovered from his rental car and granted his motion to suppress evidence recovered from his motel room with regards to his cellphones and a notebook, while admitting prepaid credit cards, a computer tablet, and cash. (Dkt. No. 99). The Government later moved for the Court to reconsider the suppression of Key's cellphone, while Key moved to suppress his post-arrest statements. (Dkt. No. 104).

On January 22, 2016, in the interest of justice, the Court exercised its discretion and granted both parties' requests to consider suppression issues that each failed to raise. (Dkt. No. 117). The Court ordered a hearing on both issues to be held on January 26, 2016. (*Id.*). After carefully considering the evidence presented at the second suppression hearing, the Court vacated its previous order suppressing Key's cellphone and granted Key's motion to suppress all of his post-arrest statements. (*See* Dkt. No. 145).

1

Following a four-day trial, at which the post-arrest statement was not used against him, a jury convicted Key on the sole count of the Indictment. (*See* Dkt. No. 158). After the trial, through counsel, Key filed a motion for acquittal under Federal Rule of Criminal Procedure 29(b) or, alternatively, a new trial under Federal Rule of Criminal Procedure 33(a), arguing that the Court erred in a number of its decisions regarding suppression, jury instructions, and other evidentiary matters. (*See* Dkt. No. 167). On April 27, 2016, Key requested to proceed *pro se*. After questioning Key and thoroughly advising him of his rights, the Court found that he knowingly and voluntarily waived his right to have an attorney and allowed him to proceed *pro se* with the understanding that he would not be entitled to a third appointed attorney. (Dkt. No. 181). Key filed pro se a supplemental motion for judgment of acquittal (Dkt. No. 173) and a motion to reconsider the motion to suppress (Dkt. No. 174).[1] On October 21, 2016, the Court denied Key's motion for acquittal or new trial filed by his prior counsel (Dkt. No. 167), Key's *pro se* supplemental motion for judgment of acquittal (Dkt. No. 173), and Key's *pro se* motion to reconsider the motion to suppress (Dkt. No. 174). (*See* Dkt. No. 220).

Key has since filed three additional post-trial *pro se* motions. On July 20, 2016, Key filed a motion for new trial due to ineffective assistance of counsel and supplemental motion for acquittal, arguing that defense counsel Heather Winslow failed to strike false testimony by Dache Clayton and that the Government failed to prove his actual knowledge of April's prostitution beyond a reasonable doubt. [200] That same day, the Court ordered any remaining post-trial motions to be filed on or before August 29, 2016. (Dkt. No. 197). On August 29, 2016, Key filed a motion to reconsider the motion to suppress and a motion for new trial, arguing that newly discovered evidence in the police records calls into question whether any of the cellphones

---

[1] Key also *pro se* filed, and quickly withdrew, a motion for reconsideration of the motion to dismiss the indictment. (*See* Dkt. 171).

entered into evidence belonged to him. [210] On September 14, 2016 – after the court-ordered deadline – Key filed a supplemental motion for the motion to reconsider the motion to suppress. [216] On September 16, 2016, the Court ordered that no further post-trial motions would be accepted, but out of an abundance of fairness to Key, said that it would consider the 9/14/2016 motion to reconsider the motion to suppress because the motion had already been presented in another form. (Dkt. No. 218).

The Court now considers Key's Motion for a Judgment of Acquittal or In the Alternative for New Trial [200], Motion to Reconsider the Motion to Suppress and Motion for New Trial [210], and Supplemental Motion for the Motion to Reconsider the Motion to Suppress. [216] For the following reasons, all three of these motions are denied.

### I. Ample Evidence in the Record Supports the Jury Finding Key Guilty Beyond a Reasonable Doubt

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction against a defendant. *See* Fed. R. Crim. P. 29. A defendant faces "a nearly insurmountable hurdle" in contending that the jury had insufficient evidence to convict him. *See United States v. Miller*, 782 F.3d 793, 797 (7th Cir. 2015) (citing *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014)). Once convicted, the Court reviews the evidence presented to the jury in the light most favorable to the Government and makes all reasonable inferences in the Government's favor. *See United States v. Cejas*, 761 F.3d 717, 726 (7th Cir. 2014) (*citing United States v. Larkins*, 83 F.3d 162, 165 (7th Cir. 1996)). The Court may overturn the jury's guilty verdict "only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013) (quoting *United States v. Stevenson*, 680 F.3d 854, 855-56 (7th Cir. 2012). The jury must weigh the

evidence and assess the witnesses' credibility, and courts do not "second-guess the jury's assessment of the evidence." *See United States v. Rollins*, 544 F.3d 820, 835 (7th Cir. 2008).

Key was convicted under 18 U.S.C. § 2423(a), which provides in pertinent part that:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate . . . commerce . . ., with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(a). Key alleges that the Government failed to prove beyond a reasonable doubt that he acted knowingly because the Government did not show that he had "actual knowledge" of April engaging in sexual activity for money. [200] Key argues that the record fails to show that he and April talked about her engaging in sexual activity for money. [*Id.*]

However, as this Court determined on Key's prior motion for acquittal, the Government presented sufficient evidence for a reasonable jury to find beyond a reasonable doubt that Key possessed specific intent. (*See* Dkt. No. 220, at 3-8). The full discussion of the evidence has already been presented in the prior order. A summary of that evidence includes the testimony of the minor victim, April, and the testimony of Dache Crayton. Both testified that Key drove April from Wisconsin to Illinois. (Trial Tr. 156:21-24; 227:19-22). Crayton testified that she had been prostituted by Key and that Key found girls for his prostitution ring through backpage.com, a website used to advertise sex in exchange for money according to April. (Trial Tr. 127:17-25; 128:1-13; 225:14-25). She also testified that Key contacted her based on a backpage.com advertisement and that she sent him a photo of her after he requested one. (Trial Tr. 129:11-24). April also testified that, once in Illinois, Key told April that Crayton "did the same thing [April] did" (i.e., posted advertisements on backpage.com to prostitute, according to April). (Trial Tr. 141:12-14). Key concedes in his motion that the record includes this fact. [200] April further

4

testified that she did not want to go down to Illinois, but she stayed because she was in the middle of nowhere and did not have enough money or contacts to leave. (Trial Tr. 142:23-25; 143:1-8). After assessing the credibility of April and Crayton, a reasonable jury could weigh this evidence, along with the totality of the record, to find that Key knowingly transported April, a minor, across state lines with the intent that she engage in prostitution. *See* 18 U.S.C. § 2423(a); *Rollins*, 544 F.3d at 835.

Key further alleges that the Government "fail[ed] to state a crime." [200] Key points to the principles of statutory interpretation employed by the Seventh Circuit in *Taylor*, which found that the defendant's conduct in that case did not constitute "sexual activity" under 18 U.S.C. § 2423(a). *See U.S. v. Taylor*, 640 F.3d 255 (7th Cir. 2011). Key alludes to the maxim *noscitur a sociis*, arguing that words grouped together should be interpreted in reference to one another. *See id.* at 263 (citing *National Muffler Dealers Ass'n, Inc. v. United States*, 4440 U.S. 472, 486 n. 20 (1979) (quoting Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961)). Specifically, he argues that words of general meaning should be construed in light of words that offer more specific meaning. *Id.* (quoting *Salter v. State*, 906 N.E.2d 212, 220 (Ind.Ct.App.2009)). Key fails to understand that Government charged him under the more specific "prostitution" prong of the statute, not the general "sexual activity" prong. This also distinguishes the case from *Taylor*, where the Government had charged the defendant under the "sexual activity" prong.

Key further argues that the Court should look to the Travel Act (18 U.S.C. § 1952) and the Mann Act (18 U.S.C. §§ 2421-2424), and thus to Illinois laws, to determine whether Key committed a prostitution-related crime in this case. Again, Key misconstrues the charge against him. The Court need not look to Illinois laws because that would only be done if the Court were attempting to define "any sexual activity for which any person can be charged with a criminal

5

offense." Once again, the statute criminalizes the transportation of a minor in interstate commerce for purpose of either prostitution or any sexual activity. The Indictment charged Key with transporting the minor for prostitution pursuant to 18 U.S.C. § 2423(a). For the purposes of the charged conduct, the Seventh Circuit defines "prostitution" as "knowingly engaging in or offering to engage in a sexual act in exchange for money or other valuable consideration." *See Pattern Criminal Jury Instructions of the Seventh Circuit* 2423(a) (2012). The jury here received the same instruction, as well as the elements of 18 U.S.C. § 2423(a) as outlined above. (Trial Tr. 537:1-19; 538:23-25). This definition aligns with April's and Crayton's description of the facts, which the jury found credible. The Indictment stated a crime, the evidence supported the crime, and the jury convicted him of that crime.

Accordingly, Key's motion for a judgment of acquittal is denied.

**II. The Record Does Not Show a Trial Error That Would Make Prejudicial Effect a Reasonable Possibility**

Alternatively, a court may vacate a judgment and grant a new trial upon the defendant's motion "if the interest of justice so requires." *See* Fed. R. Crim. P. 33; *see also United States v. Berg*, 714 F.3d 490, 500 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012). Unlike a motion for acquittal, the Court need not view the evidence in the light most favorable to the Government. *See United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999). Rather, "a defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006); *see also United States v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004), *overruled on other grounds*, 546 U.S. 12 (2005). Rule 33 motions are generally disfavored and courts should only grant them in "the most 'extreme cases.'" *See United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998) (quoting *United States V. Morales*, 902 F.2d 604, 605 (7th Cir.

1990); *see also United States v. Kamel*, 965 F.2d 484, 490 n.7 (7th Cir. 1992). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (citations omitted).

**A. The Record Does Not Support that Counsel Was Ineffective in Failing to Strike Witness Testimony**

Key argues that he should be granted a new trial because his counsel was ineffective in failing to move to strike Crayton's testimony after the Court noted that Crayton testified to a fact inaccurately. [200] The question of whether a defendant is entitled to new trial on the basis of ineffective assistance of counsel relies on the *Strickland* standard. Counsel is constitutionally ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process," and the defendant was prejudiced in his trial as a result. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). There is a "strong presumption" that an attorney's conduct falls within a "wide range of reasonable professional assistance" that "might be considered sound trial strategy." *Id.* at 689; *see Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000). If the defendant can meet this high standard, he must also show with "reasonable probability" that, "but for counsel's unprofessional errors," the jury would have reached a different conclusion without the false testimony. *See Strickland*, 466 U.S. at 694; *United States v. Fruth*, 36 F.3d 649, 652 (7th Cir. 1994).

Key alleges that the jury should have been told that Crayton committed perjury on the witness stand and that his counsel should have moved to strike Crayton's testimony from the record because of this. In particular, Key refers to Crayton's initially testifying that prior to trial she last saw Key on September 10, 2013, even though she later testified that she last saw Key at a pre-trial hearing in October 2015. (*See* Trial Tr. 224:12-14; 286:17-25; 287:1-3). Counsel did not cross-examine Crayton on this issue, but did thoroughly cross-examine Crayton on other

7

material issues. (*See* Trial Tr. 239:5-25; 240-250). For example, defense counsel effectively and diligently challenged Crayton's ability to remember anything specific about the backpage.com ad featuring April. (*See* Trial Tr. 241:15-25, 242:1-5). Counsel also cross-examined Crayton on whether a third party, Amillie, conversed with individuals whose photos he saw on backpage.com or brought them to the Super 8 Motel. (*See* Trial Tr. 244:6-14). By using the cross-examination to ask questions relevant to Crayton's credibility, and the material facts of the case, counsel acted within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Based on the significant damaging testimony presented at trial, the lack of cross-examination on this inconsequential point could not have changed the outcome of the trial. Although Key argues that the jury was not able to assess fully the truthfulness of Crayton's testimony, in reality, his counsel cross-examined Crayton and challenged her testimony on all significant aspects the charge. Counsel's choice not to challenge Crayton on her failure to remember that she had seen him in the courtroom was reasonable since it would have no impact on her credibility. The fact that she had seen him once more in this Court's courtroom had no impact whatsoever on any material issue in the case. Accordingly, the Court does not find that defense counsel provided ineffective assistance for failing to strike Crayton's testimony.

### B. "Newly Discovered Evidence" Was Not Newly Discovered

#### 1. False Testimony by Crayton

A defendant is entitled to a new trial on the basis of newly discovered evidence that discloses false testimony when: the court is reasonably well satisfied that testimony given by a material witness is false; that the jury might have reached a different conclusion without the false testimony, or had it known that testimony by a material witness was false; the party seeking new trial was "surprise[d]" when the false testimony was given and was unable to respond at the time,

or did not know the testimony was false until after the trial. *See United States v. Mazzanti*, 925 F.2d 1026, 1029 (7th Cir. 1991) (quoting *Larrison v. United States*, 24 F.2d 82, 87-88 (7th Cir. 1928)); *United States v. Nero*, 733 F.2d 1197, 1202 (7th Cir. 1984). Newly discovered evidence that impeaches a government witness is generally not sufficient to merit a new trial. *See United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989).

The fact that Crayton failed to say that she saw Key at the suppression hearing is not newly discovered evidence nor does it impact the trial in any way. As noted, Crayton testified that she had last seen Key on September 10, 2013, but later testified that she last saw him at a pre-trial hearing in October 2015. (*See* Trial Tr. 224:12-14; Trial Tr. 286:17-25; 287:1-3). Because Key was present at the suppression meeting, he knew when she testified that the statement was false. (*See* Dkt. No. 85). Nothing occurred at the suppression hearing when she saw him last that Crayton was permitted to testify about. Therefore, the fact that she failed to mention it would hardly impact on her credibility. In truth, counsel most likely chose not to question her about the inconsistency because there was nothing that counsel could do with the inconsistency. First, it was minor. Second, it had no impact on proving or disproving any fact because the suppression hearing resulted in a court ruling that Crayton was not permitted to reveal – the suppression of Key's post-arrest statement. In short, this was not newly discovered evidence, there was nothing relevant about the statement, the inconsistency did not make one fact more true or less true, and the Court could have easily prohibited her from testifying about the hearing anyway. There is no basis for a new trial based on Crayton's testimony.

### 2. Police Records about Cellphones

A defendant is also entitled to a new trial on the basis of newly discovered evidence when the new evidence: "(1) came to his knowledge only after trial; (2) could not have been

9

discovered sooner had he exercised due diligence; (3) is material; and (4) would probably lead to an acquittal in the event of a new trial." *U.S. v. Cherek*, 734 F.2d 1248, 1253 (7th Cir. 1984). The district court has the discretion to decide if the defendant's evidence meets these standards. *Nero*, 733 F.2d at 1202. Though Key frames two of his motions as a Supplemental Motion to Reconsider a Motion to Suppress [210, 216], the Court gives him one more opportunity to present his issues since he is now proceeding pro se and will evaluate these as motions for new trial under Rule 33 of the Federal Rules of Criminal Procedure. *See, e.g., Parke-Chapley Contr. Co. v. Cherrington*, 865 F.2d 907, 915 (7th Cir. 1989) ("[A]n appeal or motion for new trial, rather than a FRCP 60(b) motion, is the proper avenue to redress mistakes of law committed by the trial judge . . .").

Key moves this Court *pro se* to reconsider its order from February 5, 2016, which refused to suppress cellphone evidence recovered from his motel room on September 10, 2013. [210] (*See* Dkt. No. 145). He argues that he has uncovered police records that show newly discovered evidence that would entitle him to suppression of this evidence and a new trial. Key argues that the police records do not show that any of the cellphones found at the motel belonged to him because the record does not list his phone number (414-795-4953) as affiliated with any of the phones held for investigative purposes. [*Id.*] The evidence of the cell phones, the numbers that were affiliated with them, and the location of the phones in the room were all presented during discovery long before trial in this case. Key seems to suggest that it is newly discovered that the phone number was not "his" – presumably the number was not subscribed to him. First, this is irrelevant if the phones were located near him and on his person such that he would be the one using them. Second, there was corroborating evidence of his use of the phone to communicate with the victim and with Crayton. Finally, even if he were to overcome these hurdles, which is

doubtful, the fact that a phone was not his would only have allowed him an opportunity for cross examination on that issue and with the overwhelming evidence of his guilt would not have resulted in an acquittal. Key's Motion for New Trial [210] based on this alleged new evidence is denied.

### 3. Rental Car Registration

Key similarly moves this Court *pro se* to reconsider its orders from December 30, 2015, and February 5, 2016, that refused to suppress certain evidence recovered from his rental car on September 10, 2013. [216] (*See* Dkt. No. 99; Dkt. No. 145). The Court again evaluates this as a Motion for New Trial. *See, e.g.*, *Parke-Chapley Contr. Co.*, 865 F.2d at 915 (7th Cir. 1989). Key first argues that the officers gave false testimony by testifying that the rental car was registered to him on September 10, 2013, based on their experience with drug and prostitution related crimes. To show this, Key submits the receipt from the Super 8 Motel, which does not list a car registered to the room on the receipt. [216] In an abundance of caution, the Court requested that the Government submit to the Court the evidence supporting its statement that the phone records and the hotel records were provided in discovery. The Government did so. [225] There is no basis for Key's assertion that these items are newly discovered evidence. Simply because he is seeing a new argument that could be made based on the evidence he has had for months is not a basis for it being labeled "newly discovered." The evidence was available to him prior to trial. Even if it were not, even his new argument that the hotel records and the rental car records are inconsistent in that the hotel record does not reflect that he had a car fails because it could be so easily rebutted and witness testimony contradicted it. Again, in order for a defendant to be entitled to a new trial on the basis of newly discovered evidence that discloses false testimony, the defendant must be "surprise[d]" by the false testimony at trial, or he must not have known

that the testimony was false until after the trial. *See Mazzanti*, 925 F.2d at 1029; *Nero*, 733 F.2d at 1202. First, again this is not new evidence. The hotel records and the rental records were provided to the defendant prior to trial. (*See* Dkt. No. 225). If the rental car indeed was not registered to Key, he would have known this at the time of the officers' testimony and would have been able to identify their testimony as false through cross-examination or other documentation. The evidence was not new, and if it were, it would not have changed the outcome of the case.

### 4. All Evidence Seized from Key's Hotel Room and Arrest

Finally, Key moves the Court to again reconsider the legality of the evidence seized from his hotel room and his arrest. [216] The Court again evaluates an alleged error of the trial court as a Motion for New Trial. *See, e.g.*, *Parke-Chapley Contr. Co.*, 865 F.2d at 915 (7th Cir. 1989). Key invites the Court to reconsider his arguments that the search and seizure were illegal, and that the evidence should therefore be suppressed, arguing that he raised these issues at an earlier stage and thus they are not waived. [216] Indeed, Key has previously argued the unlawful nature of these seizures, and the Court has thoroughly responded. Key filed his Motion to Suppress Evidence Discovered as a Result of Unlawful Arrest and Unlawful Search of Motel Room. (Dkt. No. 47). After holding an evidentiary hearing on this motion on October 6, 2016, both Key and the Government filed post-hearing briefs. (Dkt. No. 87; Dkt. No. 88). The Court entered an Order on December 30, 2015, regarding these issues, which granted in part Key's motion to suppress evidence recovered from the search of his motel room. (Dkt. No. 99). After both parties submitted motions to reconsider the suppression of certain evidence, this Court held another evidentiary hearing on January 26, 2016. (Dkt. No. 122). The Court entered an Order on February 5, 2016, regarding these issues, vacating its earlier grant to suppress evidence

recovered from Key's motel room while granting the suppression of his post-arrest statement. (Dkt. No. 145). On March 31, 2016, Key filed a Motion to Reconsider these orders (Dkt. No. 99; Dkt. No. 145) after his conviction, arguing that the court failed to rule on the illegality of his arrest and seizure. (*See* Dkt. No. 174). The Court denied this motion as untimely without good cause for the delay, coming over a month after a jury convicted Key, two months after the second suppression hearing, six months after the initial suppression hearing, and over a year after the deadline for filing pretrial motions. *See* Fed. R. Crim. P. 12(c); Fed. R. Crim. P. 12(b)(3) advisory committee's note to 2014 amendment. (*Id.*) At that point, the Court ruled that Key waived his argument that his arrest was illegal and failed to challenge that officers had probable cause to arrest him. *See United States v. Kirkland*, 567 F.3d 316, 320-21 (7th Cir. 2009); *see also United States v. Moody*, 664 F.3d 164, 167–77 (7th Cir. 2011). (*Id.*) The Court again denies motion for new trial based on these challenges.

## CONCLUSION

For the reasons stated, the Court denies Key's *pro se* Motion for Acquittal or New Trial [200]; Key's *pro se* Supplemental Motion for to Reconsider Motion to Suppress and New Trial [210]; and Key's *pro se* Supplemental Motion for to Reconsider Motion to Suppress [216].

Virginia M. Kendall  
United States District Court Judge  
Northern District of Illinois

Date: 11/8/2016

13